People ex rel. Welch v Maginley-Liddie (2025 NY Slip Op 03645)

People ex rel. Welch v Maginley-Liddie

2025 NY Slip Op 03645

Decided on June 17, 2025

Court of Appeals

Garcia, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 17, 2025

No. 53 

[*1]The People & c. ex rel. Danielle Welch, & c., Appellant,
v
Lynelle Maginley-Liddie, & c., Respondent.

Danielle Welch, for appellant. 
William H. Branigan, for respondent. 

GARCIA, J.:
CPL 510.10 (4) (t) provides a judge with discretion to set bail on certain otherwise non-qualifying offenses committed after a defendant has been "released under conditions" on a prior charge. The issue raised on this appeal is whether a defendant who is arrested on new charges after having been released on bail on the prior, underlying charge is "released under conditions" within the meaning of that provision. We hold that the statute applies in such circumstances, and because affirmative habeas relief is no longer available, we reverse the Appellate Division order to convert the proceeding to a declaratory judgment action and grant judgment in accordance with this opinion. 
The 2019 bail reform legislation eliminated cash bail for most crimes, except for certain specified qualifying offenses listed in CPL 510.10 (4) (L 2019, ch 59, § 1, part JJJ, § 2; see People ex rel. Rankin v Brann, 41 NY3d 436, 441 [2024]). In 2020, the legislature amended subdivision (4) by expanding the categories of offenses that qualified for bail. The changes included the addition of CPL 510.10 (4) (t), a harm-on-harm provision, by which "an otherwise non-qualifying offense may be converted into a qualifying offense" (People v Lee, 77 Misc 3d 794, 800 [Crim Ct, NY County 2022]; CPL 510.10 [4] [t], as added by L 2020, ch 56, part UU, § 2; see Report on the 2020-21 Adopted Budget, at 8 [Part UU of the adopted budget "creates a mechanism for repeat offenders to be assigned bail"]). Under that provision, certain ineligible crimes may otherwise qualify for bail if those crimes "arose from conduct occurring while the defendant was released on his or her own recognizance, released under conditions or [*2]had yet to be arraigned after the issuance of a desk appearance ticket for a separate felony or class A misdemeanor involving harm to an identifiable person or property" (CPL 510.10 [4] [t]). For purposes of section (4) (t), the underlying crime need not be a qualifying offense (id.).
In 2022, defendant was arrested and charged with several felony offenses, including attempted murder, a qualifying offense (see Penal Law § 125.25 [1]; CPL 510.10 [4] [a]). The court set bail, which defendant posted, and he was released. The following year, while out on bail, defendant was arrested on charges of theft, larceny, and criminal possession of stolen property (see Penal Law §§ 155.25; 165.45 [2]; 165.40; 190.79 [1]). The new charges standing alone were not qualifying offenses, but at defendant's arraignment the People asked the court to set bail under CPL 510.10 (4) (t), noting that he allegedly committed the instant theft offenses while released on an underlying attempted murder charge. Defense counsel asked the court to impose supervised release given defendant's ties to the community and his appearance record in the underlying case. Instead, the court set bail, explaining that defendant was "before the Court on an otherwise non-bail qualifying offense, which is alleged to have been committed while at liberty on bail" for a prior violent felony, and concluding that bail was appropriate under the circumstances to ensure defendant's "future appearances" at court.
Defense counsel made bail applications at several subsequent hearings, contending that the original securing order made pursuant to CPL 510.10 (4) (t) was improper and asked the court to release defendant to supervised release. Counsel argued that CPL 510.10 (4) (t) only applies to those defendants who are released on recognizance or released under non-monetary conditions, and is not implicated where a defendant is released on the "separate condition" of bail. Because defendant was not "at liberty based on the court releasing him under conditions," counsel asserted that the statute did not apply. Each of these applications was denied, with the courts rejecting defendant's interpretation of the harm-on-harm provision.
Defendant's counsel then commenced this habeas proceeding before the Appellate Division seeking defendant's release on the ground that CPL 510.10 (4) (t) did not apply and that as a result, his later theft charges could not be considered qualifying offenses. The court rejected defendant's reading of the statutory language "released under conditions" as excluding bail, explaining that such an interpretation would require writing the phrase "non-monetary" into the statute (225 AD3d 644, 645 [2d Dept 2024]). Instead, the court held that the use of the term "conditions" without the "non-monetary" modifier "evidenc[ed] the intent of the Legislature to apply that statute to all conditions of release rather than only non-monetary conditions" and dismissed the writ (id.). Defendant was subsequently released upon posting bail.[FN*]
Defendant first argues that bail is not a "condition" of release at all and therefore the language "released under conditions" as used in CPL 510.10 (4) (t) does not encompass a defendant who was released on bail on an underlying offense. If bail is "posted on behalf of the principal and approved, [the court] will permit [the principal] to be at liberty during the pendency of the criminal action or proceeding involved" (CPL 500.10 [3]). That is, the principal is released on the condition that they have paid the amount set by the court. Accordingly, bail is a condition of release and a defendant who posts bail has been "released under conditions."
Defendant also asserts that, even if bail is a condition, we should interpret the phrase "released under conditions" as applying only to defendants released solely on non-monetary conditions on the underlying crime. According to defendant, section (4) (t) was meant to apply to "the narrow group of defendants who had been released without bail and gotten re-arrested on additional bail-ineligible offenses," and claims that in passing section (4) (t), the "legislature closed a gap in the bail statute, returning discretion to judges to set cash bail on those individuals with multiple open non-qualifying cases." Defendant maintains that "this new section was not necessary for individuals who had posted bail, as they necessarily had an open qualifying offense that was subject to modification" under a different statute.
As an initial matter, the legislature uses no such limiting language in this portion of the statute. Whereas elsewhere in (4) (t) the statute refers to defendants "released . . . under appropriate non-monetary conditions," here only the more general language "released under conditions" is used (see CPL 510.10 [4] [t]). Moreover, the plain terms of CPL 510.10 (4) (t) disprove this argument, making clear that the less restrictive meaning of "conditions" was indeed intended. The provision states that "the underlying crimes need not be a qualifying offense as defined in this subdivision"—meaning, of course, that the underlying crime may be a qualifying offense and that bail, as a condition of release, may be set for such offense. There is no dispute that section (4) (t) would apply had the trial court exercised its discretion and released defendant on non-monetary conditions rather than setting bail on the underlying qualifying offense (see CPL 510.10 [4]). Upon a subsequent arrest, defendant, in that situation out on non-monetary conditions, would be bail-eligible on the new charges even though defendant's status in the original case could instead be "modified" and bail set on the underlying charge. Yet this is the same result faced by a defendant who initially had bail set on that underlying offense (see CPL 530.60), and therefore defendant's argument that those already subject to modification for a bail-eligible offense do not fall within section (4) (t)'s purview fails.
Nothing in the statutory language limits its application only to those defendants with "open non-qualifying cases" who have been released on non-monetary conditions. Rather, CPL 510.10 (4) (t) applies to a defendant who is released under any condition, including bail, consistent with the statute's goal to create "a mechanism for repeat offenders to be assigned bail" for non-qualifying offenses allegedly committed while released on another charge (Report on the 2020-21 Adopted Budget, at 8; see People v Brown, 69 Misc 3d 229, 235 [Orange County Ct 2020]). In such circumstances, those non-qualifying offenses "are classified as qualifying offenses," and judges are authorized to impose bail (Brown, 69 Misc 3d at 235). Whether a judge in any such case chooses to do so is, of course, within their discretion.
Accordingly, the judgment of the Appellate Division should be reversed, without costs, the habeas corpus proceeding converted into a declaratory judgment action, and judgment granted, declaring that a defendant who is arrested on new charges after having been released on bail on a prior charge is "released under conditions" within the meaning of CPL 510.10 (4) (t).

RIVERA, J. (concurring):

I agree that the phrase "released under conditions" in CPL 510.10 (4) (t) applies to defendants who posted bail in their underlying case. However, I depart from the majority's reasoning where it reaches the sweeping conclusion that bail is, generally, "a condition of release" (majority op at 5). That conclusion is wholly unnecessary to interpret CPL 510.10 (4) (t), and it risks forcing a particular interpretation of the word "condition" on other provisions of the bail statute, contrary to the legislature's intention, with potentially unintended consequences.
The phrase "released under conditions," read in isolation from the rest of CPL 510.10 (4) (t), is ambiguous. The bail statute only defines "release under non-monetary conditions" (CPL 500.10 [3-a]). Indeed, "released under conditions" appears nowhere else in the bail statute. Other provisions consistently refer to defendants who have posted bail, either as a single group or among all defendants who are not incarcerated, as being "at liberty," rather [*3]than "released under conditions" (see e.g. CPL 530.60 [1] ["Whenever in the course of a criminal action or proceeding a defendant is at liberty as a result of . . . bail . . . , and the court considers it necessary to review such order . . . the court may . . . by bench warrant if necessary, require the defendant to appear before the court"]).[FN*] The legislature's decision to use "at liberty" throughout the bail statute, in entirely different provisions enacted over the span of decades, dating back to the enactment of the Criminal Procedure Law in 1970, raises the question of whether the legislature switched to different language for no apparent reason when, 50 years later, it enacted CPL 510.10 (4) (t).
Reading CPL 510.10 (4) (t) as a whole, as we must, resolves this ambiguity and makes plain the legislature's intent (see People v Mobil Oil Corp., 48 NY2d 192, 199 [1979] ["It is a well-settled principle of statutory construction that a statute or ordinance must be construed as a whole"] [internal citations omitted]). Dispositively, CPL 510.10 (4) (t) applies to defendants who were charged with bail qualifying offenses in their underlying case, "[f]or the purposes" of that provision. The legislature would have excluded those defendants if it only meant for CPL 510.10 (4) (t) to apply when the court in the underlying case cannot fix or modify bail. Moreover, the phrase "for the purposes" reflects the legislature's intention to define "released under conditions" through the remaining language in CPL 510.10 (4) (t), not external provisions. That language also supports that the legislature did not intend to impose a new definition for the term "conditions" that necessarily applies to other provisions in the bail statute. Thus, for the sole purpose of interpreting CPL 510.10 (4) (t), "release under conditions" includes defendants who posted bail. The analysis ends there, and there is no need to decide whether bail is necessarily a "condition," as the legislature may use that word in other provisions.
The majority therefore goes too far. Citing the definition of "cash bail" in CPL 500.10 (3), it asserts the general proposition that a "principal is released on the condition that they have paid the amount set by the court," and that bail is therefore "a condition of release" (majority op at 4-5). Aside from being unnecessary to interpret CPL 510.10 (4) (t), the majority's textual analysis is internally inconsistent and violates the rule against superfluity. If bail is a "condition of release" merely because a defendant must satisfy some condition to remain at liberty, then release on recognizance is also a "condition." "A court releases a principal on [their] own recognizance when . . . it permits the principal to be at liberty during the pendency of the criminal action . . . upon condition that the principal will appear thereat whenever [their] attendance may be required and will at all times render [them] amenable to the orders and processes of the court" (CPL 500.10 [2]). Applying the majority's reasoning, a person released on their own recognizance, on the condition that they appear in court and comply with court orders, has also been "released under conditions." However, this interpretation is inconsistent with CPL 510.10 (4) (t), which distinguishes between defendants whom the court "released on [their] own recognizance" and "released under conditions," and would render the former category superfluous (see McKinney's Cons Laws of NY, Book 1, Statutes § 98 [a] ["A construction that would render a provision superfluous is to be avoided"]; Mestecky v City of New York, 30 NY3d 239, 243 [2017] ["(M)eaning and effect should be given to every word of a statute and . . . an interpretation that renders words or clauses superfluous should be rejected"] [internal citations omitted]).
I join in affirming the Appellate Division, but without adopting the majority's extraneous and flawed proclamation that, other than for purposes of CPL 510.10 (4) (t), a statutory reference to "conditions" necessarily includes bail. When the legislature intends that result, it uses clarifying language, as it did in section (4) (t). Enough said.
Judgment reversed, without costs, habeas corpus proceeding converted to a declaratory judgment action and judgment granted declaring that a defendant who is arrested on new charges after having been released on bail on a prior charge is "released under conditions" within the meaning of CPL 510.10 (4) (t). Opinion by Judge Garcia. Judges Singas, Cannataro, Troutman and Halligan concur. Judge Rivera concurs in result in an opinion, in which Chief Judge Wilson concurs.
Decided June 17, 2025

Footnotes

Footnote *: The parties agree that because defendant is no longer in custody, this appeal is moot, and habeas corpus relief is no longer available (see People ex rel. McManus v Horn, 18 NY3d 660, 664 & n 2 [2012]). However, because this appeal presents a novel issue that is likely to recur and will typically evade our review, we convert the proceeding to a declaratory judgment action and apply the mootness exception to resolve the statutory construction issue (see Brann, 41 NY3d at 442 n 4). We do not reach defendant's additional arguments.

Footnote *: The bail statute contains numerous other examples (see CPL 500.10 [3] [defining "fix bail" to mean that a court "designates a sum of money and stipulates that, if bail in such amount is posted on behalf of the principal and approved, it will permit (them) to be at liberty during the pendency of the criminal action"] [emphasis added]; CPL 500.10 [13] [defining "bail bond" to mean "a written undertaking, executed by one or more obligors, that the principal designated in such instrument will while at liberty as a result of an order fixing bail and the posting of the bail bond in satisfaction thereof, appear in a designated criminal action"] [emphasis added]; CPL 510.30 [3] ["When bail . . . is ordered, the court shall inform the principal . . . that the release is conditional and that the court may be authorized to commit the principal to the custody of the sheriff . . . if the principal commits a subsequent felony while at liberty upon such order"] [emphasis added]; CPL 510.40 [1] ["If such principal is in the custody of the sheriff or at liberty upon bail at the time of the order, the court must direct that . . . the principal's bail be exonerated"] [emphasis added]; CPL 510.40 [2] [requiring that when a principal posts bail and the court determines that it complies with the order fixing bail, it must "approve the bail and issue a certificate of release, authorizing the principal to be at liberty"] [emphasis added]; CPL 510.50 [1] ["If the principal is at liberty . . . on bail, the principal's attendance may be achieved or compelled by various methods, including notification and issuance of a bench warrant"] [emphasis added]; CPL 510.50 [2] [requiring a court to provide 48 hours' notice before it issues a bench warrant for failure to appear at a scheduled court date, "(e)xcept when the principal is charged with a new crime while at liberty"] [emphasis added]; CPL 530.45 [1] ["When the defendant is at liberty . . . as a result of a prior securing order" and the court fixes a more burdensome form of bail, if a defendant is convicted of certain offenses, a defendant may request a securing order modification] [emphasis added]; CPL 530.60 [2] [a] ["Whenever . . . a defendant charged with the commission of a felony is at liberty as a result of . . . bail . . . it shall be grounds for revoking such order that the court finds reasonable cause to believe that the defendant committed" a particular felony offense] [emphasis added]; CPL 530.60 [2] [b] [a defendant "at liberty as a result of a securing order issued pursuant to this article" may have that order revoked under certain circumstances, including where there is clear and convincing evidence that they violated an issue of protection "while at liberty," intimated a victim or witness "while at liberty," or "committed a felony while at liberty"]; CPL 530.60 [2] [e] [a defendant charged with certain offenses "while [they] were at liberty . . . may be committed to the custody of the sheriff pending a revocation hearing for a period not to exceed seventy-two hours"]).